IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| CLEVELAND BERNARD REED and TIFFANY REED, | * * * | |
| Plaintiffs, | * * | |
| BUILDERS MUTUAL INSURANCE COMPANY, | * * * | CV 120-071 |
| Intervenor Plaintiff, | * * | |
| v. | * * | |
| TRACTOR & EQUIPMENT COMPANY, | * * | |
| Defendant. | * * | |

## O R D E R

Before the Court is Plaintiffs' motion to exclude in part the testimony of Michael Sutton, P.E. (Doc. 82), Defendant's motion for summary judgment (Doc. 84), and Defendant's motion to exclude in part the testimony of Roger Tate, P.E., and Chris Shiver, P.E. (Doc. 88). For the following reasons, Plaintiffs' motion to exclude in part the testimony of Mr. Sutton (Doc. 82) is **GRANTED IN PART and DENIED IN PART**, Defendant's motion for summary judgment (Doc. 84) is **DENIED**, Defendant's motion to exclude in part the testimony of Mr. Tate (Doc. 88) is **GRANTED IN PART and DENIED IN PART**, and Defendant's motion to exclude in part the testimony of Mr. Shiver (Doc. 88) is **DENIED AS MOOT**.

## I. BACKGROUND

Plaintiff Cleveland Reed ("Mr. Reed") worked for Columbia Diversified, Inc. ("CDI"), a Georgia-based construction company. (Doc. 94, at 1.)  On October 4, 2018, Mr. Reed and at least two of his co-workers, Mr. Greg Aplin and Mr. Christopher King, were sent to a jobsite at Polaris Tech Charter School in Ridgeland, South Carolina, to service a retention pond.  (Id. at 1-2.)  The job involved using a Hitachi Excavator ("Excavator") to lift a five-ton concrete box and place the box into the retention pond.  (Id. at 2.)  The Excavator is owned by David Wheatley, owner of CDI. (Id.)  To assist in lifting the concrete box, Mr. Reed entered the box to attach cables to the lifting eyes inside the box.  (Id.) Mr. Wheatley was the operator of the Excavator.  (Id.)  The Parties dispute whether Mr. Wheatley started operating the Excavator while Mr. Reed was still inside the box.  (Id. at 2-3.)  According to Defendant, Mr. Wheatley began either lifting the box or removing slack from the cables while Mr. Reed was still in the box.  (Id. at 2.)  According to Plaintiffs, Mr. Wheatley denied operating the Excavator while individuals were under the load, and instead, Plaintiffs assert the accident occurred during the process of Mr. Reed attaching the cables to the box.  (Id. at 25.)

Nonetheless, while Mr. Reed was still inside the box, a hydraulic hose on the Excavator burst, and the loss of pressure caused the Excavator's boom arm to fall.  (Id. at 2.)  The

2

Excavator's bucket hit Mr. Reed.   (Id.)   As a result of the accident, Mr. Reed suffered numerous injuries, including an above-the-knee amputation.  (Id.)  The South Carolina Occupational Safety and Health Administration ("SC OSHA") investigated the accident and fined CDI for operating the Excavator bucket above Mr. Reed. (Id. at 3.)   The Parties agree the accident was caused by a hydraulic hose that burst in the Excavator.  (Id. at 5.)  The hose that failed (the "Subject Hose") was manufactured by Gates.  (Id. The Subject Hose burst because it was "undercrimped," meaning the metal fitting on the Subject Hose exceeded Gates' crimping diameter recommendations.  (Id.)

Defendant Tractor & Equipment Company, a machine and parts distributor, performed maintenance work on the Excavator from August 29, 2016 to September 14, 2016.  (Id.)  The maintenance work Defendant performed is documented in Defendant's service invoice dated September 28, 2016 ("Service Invoice") and Defendant's daily report logs ("Daily Reports").  (Id.; Docs. 85-8, 85-9.)  The Service Invoice and Daily Reports reveal that on August 29, 2016, Defendant replaced four hydraulic hoses in the same area as the Subject Hose.  (Doc. 94, at 5.)  Defendant completed its work on the Excavator on September 14, 2016 and the Excavator was subsequently used by CDI at some time between September 15, 2016 and September 21, 2016.  (Id. at 5-6.)

3

Following Mr. Reed's accident, both Parties hired experts to inspect the Excavator. (Id. at 9.) Photographs taken after the accident show a manufacture code of "IO080416" on the Subject Hose, which indicates the Subject Hose was manufactured by Gates in Iola, Kansas, on August 4, 2016. (Id.) The Subject Hose had a pressure rating of 4000 pounds per square inch ("PSI"), a hose style of "GA12EFG4K," and was located at the front of the Excavator's boom, adjacent to three other hoses serving the boom cylinder. (Id.) Unlike the Subject Hose, the three adjacent hoses were all manufactured in Mexico on June 22, 2016, had a pressure rating of 3100 PSI, and crimped to Gates specifications. (Id.)

The discovery process revealed that the Subject Hose had the same Gates hose style number, "GA12EFG4K," as the hose listed on the Service Invoice. (Id. at 13.) Defendant analyzed its inventory records for Gates hose style "GA12EFG4K," ("Inventory Records"), and no receipt of hose style "GA12EFG4K" was documented in the Inventory Records between August 4, 2016 and September 14, 2016. (Id.; Doc. 85-23.) On April 18, 2022, Plaintiffs' expert witness, Mr. Tate, inspected the Excavator and discovered a three-fourth inch Parker brand hose connected to the Excavator's bucket cylinder retract port, and a second Parker brand hose in the swivel, with a manufacture date of June 29, 2018. (Doc. 94, at 23.)

Mr. Reed and his wife, Plaintiff Tiffany Reed ("Mrs. Reed") (collectively, "Plaintiffs"), bring various negligence and products liability claims against Defendant. (See Doc. 1-1.) Plaintiffs originally filed this action in the State Court of Richmond County, and Defendant removed to this Court based on diversity jurisdiction. (Doc. 1, at 1.) Defendant now moves for summary judgment on all of Plaintiffs' claims. (Doc. 85.) Both Parties filed motions to exclude each other's experts. (Docs. 82, 88.) The Court will first address the Parties' motions to exclude, followed by Defendant's motion for summary judgment.

## II. MOTIONS TO EXCLUDE

Defendant moves to exclude in part the testimony of Plaintiffs' experts, Mr. Tate and Mr. Shiver.[1] (Doc. 88.) Plaintiffs move to exclude in part the testimony of Defendant's expert, Mr. Sutton. (Doc. 82.) The Court addresses the motions below.

### A. Legal Standard

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] Plaintiffs withdrew their designation of Mr. Shiver as an expert witness. (Doc. 93, at 1, n.1.) Thus, Defendant's motion to exclude the expert testimony of Mr. Shiver is **DENIED AS MOOT**.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"As the Supreme Court recognized in Daubert v. Merrell Dow Pharms., Inc., [509 U.S. 579 (1993)], Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of [expert] testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has explained that district courts are to engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Quiet Tech., 326 F.3d at 1340. Specifically, the court must consider whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

6

Id. at 1340-41.

First, an expert may be qualified to testify due to his knowledge, skill, experience, training, or education. Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008). A witness's qualifications must correspond to the subject matter of his proffered testimony. See Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999).

Second, the testifying expert's opinions must be reliable. In Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are four factors that courts should consider: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant community. Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). Thus, "the trial judge must have considerable leeway in deciding in a particular

case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes (2000 amendment). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, neither an expert's qualifications and experience alone nor his unexplained assurance that his or her opinions rely on accepted principles is sufficient. McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1244 (11th Cir. 2005); Frazier, 387 F.3d at 1261. Moreover, when analyzing a witness's reliability, courts must be careful to focus on the expert's principles and methodology rather than the scientific conclusions that they generate. Daubert, 509 U.S. at 595.

Third, expert testimony must assist the trier of fact to decide a fact in issue. Thus, the testimony must concern matters

beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case.  Frazier, 387 F.3d at 1262; Daubert, 509 U.S. at 591.  The Supreme Court has described this test as one of "fit."  Daubert, 509 U.S. at 591.  "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Frazier, 387 F.3d at 1262-63.

**B. Defendant's Motion to Exclude Expert Testimony of Mr. Tate**

Defendant moves, pursuant to Federal Rule of Evidence 702 and Daubert, to exclude the testimony of Mr. Tate.  (Docs. 88,89.) Plaintiffs responded in opposition (Doc. 93), and Defendant did not reply.

Mr. Tate is a professional engineer who was hired by Plaintiffs to provide an engineering analysis of the accident. (Doc. 85-4, at 2, 55.)  He has a Bachelor of Science in Mechanical Engineering from the University of Oklahoma, a Master of Engineering in Mechanical Engineering from the University of Texas at Arlington, and he has completed some doctoral work in mechanical engineering at the University of Texas at Austin.  (Id. at 55.) Mr. Tate works for Verité Forensic Engineering, LLC, as a Mechanical and Fire Protection Engineer.  (Id. at 56.)  In preparing his initial expert report, he examined the Subject Hose, the three adjacent hoses, and the Excavator, and spoke with Gates' technical services department to decode the date codes on the

hoses. (Id. at 4.) As a result of his investigation, he formulated five conclusions, which are documented in his initial expert report. (Id. at 8.) On May 5, 2022, Mr. Tate submitted a supplemental report, in which he indicated that he reviewed additional documents, including photographs, invoices, and depositions, and conducted an additional investigation, where he further examined the Excavator and the hoses. (Doc. 85-25, at 2-3.) In his supplemental report, Mr. Tate revised one of the conclusions in his initial report and added another conclusion. (Id. at 7.) Defendant now moves to exclude the opinions, testimony, and documentary evidence of Mr. Tate: (1) that Defendant installed the Subject Hose; and (2) regarding Defendant's inventory system, inventory systems generally, logistics, supply chain, and supply chain speed. (Doc. 88, at 1-2.) The Court addresses each argument below.

1.   Opinions, Testimony, and Documentary Evidence That Defendant Installed the Subject Hose

Defendant moves to exclude Mr. Tate's opinions and testimony that Defendant installed the Subject Hose and all documentary evidence supporting the same[2] on the basis that the opinions are

---

[2] The Court notes Defendant does not specifically identify which of Mr. Tate's opinions it moves to exclude; rather, Defendant moves to generally exclude Mr. Tate's opinions, testimony, and documentary evidence "that [Defendant] fabricated and installed the [Subject Hose]." (See Doc. 89, at 10.) Defendant cites to pages of Mr. Tate's initial report, and cites lines of his deposition testimony, but does not identify any specific opinions in his initial or supplemental report that it moves to exclude. (See id. at 10-13.)

not reliable and not helpful to the jury. (Doc. 89, at 18.) Specifically, Defendant moves to exclude Mr. Tate's opinion and related testimony that "[Defendant] fabricated and installed the [Subject Hose] in August through September of 2016, two years prior to the accident." (Id. at 10.) Defendant does not challenge Mr. Tate's qualifications as an expert on this matter.

a. *Reliability*

Defendant argues Mr. Tate's conclusion that Defendant installed the Subject Hose is speculative because: (1) three of the bases upon which his opinion rests are not sufficiently independent to support his conclusion; and (2) his opinion is based on "the reliability of Mr. Wheatley's testimony that only [Defendant] serviced the Excavator from September 2016 until the accident in October of 2018 and [Mr. Tate's] determination that Mr. Wheatley's testimony was more credible than opposing evidence from Mr. Tolbert[3] . . . and [Defendant's] invoices." (Id. at 18-19.)

The Court finds Mr. Tate's testimony is not speculative. Expert testimony is "admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation . . .[h]owever, absolute certainty is not required." Jones v. Otis Elevator Co., 861 F.2d

---

[3] Jeremy Tolbert is Defendant's Rule 30(b)(6) corporate representative who was deposed twice in this case. (See Docs. 85-10, 85-11.)

655, 662 (11th Cir. 1988) (internal citations omitted).   In response to Defendant's first argument, Plaintiffs argue Mr. Tate's conclusion that Defendant installed the Subject Hose is not speculative as he conducted inspections of the Subject Hose and Excavator, reviewed testimony of fact witnesses, and conducted detailed analysis in formulating his conclusions.   (Doc. 93, at 12.)   The Court agrees with Plaintiffs.   Mr. Tate performed an investigation and concluded Defendant installed the Subject Hose based on information learned in his investigation.   Moreover, as to Defendant's argument that Mr. Tate's conclusion is speculative because three of the bases upon which his conclusion rests are not independently sufficient, Plaintiffs explain Mr. Tate's conclusion that Defendant installed the Subject Hose is not predicated on a single factor, rather, it is based on several factors taken together.   (Id. at 13-14).   Absolute certainty is not required for an expert's opinion to be reliable, and Mr. Tate's conclusion that Defendant installed the Subject Hose is more than mere speculation. See Otis Elevator Co., 861 F.2d at 662.   Therefore, the Court will not exclude his opinion on this basis.

Second, Defendant argues Mr. Tate's opinion that Defendant installed the Subject Hose is not reliable because his opinion is based on an impermissible credibility determination where he found Mr. Wheatley's testimony more credible than Mr. Tolbert's testimony and the Service Invoice.   (Doc. 89, at 19.)   Defendant

also argues Mr. Tate is impermissibly parroting the testimony of Mr. Wheatley, a fact witness. (Id.) The Court addresses Defendant's argument regarding the credibility determination below as a challenge to helpfulness. As for Defendant's argument that Mr. Tate is parroting the testimony of Mr. Wheatley, the Court disagrees. "Inappropriate parroting occurs when an expert adopts another expert's opinion wholesale, without reaching independent conclusions in reliance on that opinion." Fox v. General Motors LLC, No. 1:17-cv-209, 2019 WL 3483171, at *26 (N.D. Ga. Feb. 4, 2019). Here, Defendant argues Mr. Tate is inappropriately parroting a fact witness as opposed to an expert. However, as discussed above, Mr. Tate's conclusion that Defendant installed the Subject Hose is based on several factors, not solely based on Mr. Wheatley's testimony. Plaintiffs explain as much in their response. (Doc. 93, at 13-14.) Therefore, the Court will not exclude Mr. Tate's testimony on this basis.

   b. *Assists the Trier of Fact*

Defendant also moves to exclude Mr. Tate's opinions and testimony that Defendant installed the Subject Hose on the basis that his opinions are not helpful to the jury as Mr. Tate made an impermissible credibility determination by finding Mr. Wheatley's testimony more reliable than Defendant's evidence. (Doc. 89, at 19.) Defendant argues expert testimony concerning the credibility of a witness "invades the jury's province to make credibility

13

determinations." (Id. at 17 (quoting United States v. Beasley, 72
F.3d 1518, 1528 (11th Cir. 1996)).)  In response, Plaintiffs state
Mr. Tate will not be offered as a witness to opine on the
credibility of witnesses; rather he will testify to the conclusions
expressed in his report and the bases for those conclusions. (Doc.
93, at 19.)  Nevertheless, Plaintiffs argue Mr. Wheatley's
testimony is only one of several factors Mr. Tate relied upon in
concluding Defendant installed the Subject Hose and Defendant's
objection goes to the weight of Mr. Tate's testimony, not the
admissibility, which should be addressed on cross-examination.
(Id. at 13, 19-20.)

The Court agrees with Plaintiffs; thus, the Court will not
exclude the opinions and testimony of Mr. Tate simply because he
considered the evidence and gave certain evidence more weight than
other evidence.  "An expert is . . . permitted to base his opinion
on a particular version of the disputed facts and the weight to be
accorded to that opinion is for the jury." Feliciano v. City of
Miami Beach, 844 F. Supp. 2d 1258, 1265 (S.D. Fla. 2012) (citation
omitted).  However, to the extent Mr. Tate intends to opine on
credibility, he is precluded from doing so because credibility
determinations are for the fact-finder.  See Beasley, 72 F.3d at
1528.  Otherwise, Defendant may challenge the bases underlying Mr.
Tate's conclusion on cross-examination.  See Tindall v. H&S Homes,
LLC, No. 5:10-cv-044, 2012 WL 3242128, at *7 (M.D. Ga. Aug. 7,

2012) (quoting <u>Viterbo v. Dow Chem. Co.</u>, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissablity and should be left for the jury's consideration."). As such, Mr. Tate's opinion, and related testimony that Defendant installed the Subject Hose, is admissible.

      2. <u>Opinions, Testimony, and Documentary Evidence Regarding Defendant's Inventory Systems, Logistics, Supply Chain, and Supply Chain Speed</u>

Defendant also moves to exclude Mr. Tate's opinions, testimony, and documentary evidence related to "Defendant's inventory systems, inventory system[]s generally, logistics, supply chain, and supply chain speed" because he is not qualified to give such testimony. (Doc. 89, at 21.) Specifically, Defendant seeks to prevent Mr. Tate from testifying : (1) "that he did not give full credibility to [Defendant's] [I]inventory [Records] because he claimed they did not show scrap or hose waste and due to [Defendant's] lack of reconciliation in the inventory"; and (2) "that it would be possible for [Defendant] to have hose manufactured on August 4, 2016 in their inventory in time for their work on the Excavator that ended on September 14, 2016."[4]   (<u>Id.</u>)

---

[4] In its motion to exclude, Defendant cites testimony that appears in Mr. Tate's deposition.  (<u>See</u> Doc. 89, at 11-13 (citing Deposition of Roger Tate ("Tate Dep."), Doc. 85-20, at 21, 23, 25, 34-35).)  It is not clear if Defendant moves to exclude related opinions from Mr. Tate's initial report and supplemental report as well, because while Defendant moves to exclude "all opinions,

Defendant argues Mr. Tate is not qualified to offer this testimony because he admitted he does not understand how Defendant's inventory system works, he is not an expert in inventory operations or logistics, and he has never given testimony regarding supply chain speed.   (Id.)   In response, Plaintiffs do not offer Mr. Tate's qualifications; instead, Plaintiffs argue his testimony is admissible because it is "(1) precisely of the kind Mr. Sutton has offered *for* [Defendant]; and (2) is offered primarily to address [Defendant's] alternative theory which disputes Mr. Tate's opinion regarding the provenance of the Subject Hose Assembly." (Doc. 93, at 21 (emphasis in original).)

The Court finds Mr. Tate is not qualified to offer these opinions.   An expert may be qualified based on his knowledge, skill, experience, training, or education.   Trilink Saw Chain, LLC, 583 F. Supp. 2d at 1304.   "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."   Allison, 184 F.3d at 1306 (citations omitted).   Here, Plaintiffs have not satisfied their burden in showing Mr. Tate is qualified to testify on inventory or supply chain issues.   In response to Defendant's motion, Plaintiffs

---

testimony and documentary evidence . . . regarding [Defendant's] inventory system, inventory systems generally, logistics, supply chain, and supply chain speed," it only specifically cites Mr. Tate's deposition testimony.   (See id. at 11-13, 21.)

essentially argue Mr. Tate should be permitted to offer this testimony because Mr. Sutton offers similar testimony; Plaintiffs do address Defendant's challenge to Mr. Tate's qualifications. (See Doc. 93, at 20-24.)   However, as Defendant highlights, Mr. Tate conceded he is not an expert in inventory operations or logistics and has never given testimony regarding supply chain speed.   (Doc. 89, at 21.)   While Mr. Tate states his knowledge of supply chain speed and logistics comes from his experience and education, he provides little information connecting his experience and education to supply chain matters.   (Tate Dep., at 34-35.)   Plaintiffs have not met their burden in showing Mr. Tate is qualified to testify on these matters; therefore, his testimony is excluded.

### 3. Conclusion

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to exclude the testimony of Mr. Tate. (Doc. 88.)   Mr. Tate is **EXCLUDED** from offering testimony and related opinions that (1) "he did not give full credibility to [Defendant's] inventory documents because he claimed they did not show scrap or hose waste and due to [Defendant's] lack of reconciliation in the inventory"; and (2) "it would be possible for [Defendant] to have hose manufactured on August 4, 2016 in their inventory in time for their work on the Excavator that ended

on September 14, 2016." (Doc. 89, at 21.) The Court now turns to Plaintiffs' motion to exclude.

## C. Plaintiffs' Motion to Exclude the Testimony of Mr. Sutton

Plaintiffs move, pursuant to Federal Rules of Evidence 401, 403, 702, and <u>Daubert</u>, to exclude the testimony of Mr. Sutton. (Doc. 82.) Defendant responded in opposition to this motion (Doc. 92), and Plaintiffs did not reply.

Mr. Sutton is a professional engineer with a Bachelor of Science in Mechanical Engineering from North Carolina State University and a Master of Engineering with a concentration in mechanical engineering from North Carolina State University. (Doc. 82-1, at 1.) Mr. Sutton works for the consulting engineering firm Accident Research Specialists, PLLC, where he provides technical investigation and analysis of accidents and failures involving vehicles and machinery. (<u>Id.</u>) Over his career, Mr. Sutton has been involved in many excavator cases, including cases involving failures of hydraulic hoses. (Deposition of Michael Sutton ("Sutton Dep."), Doc. 82-3, at 5-6.)

In preparing his initial expert report, Mr. Sutton inspected the Excavator and the hoses; reviewed photographs, measurements, and notes from inspections of the Excavator and hoses; reviewed photographs of the accident site; reviewed depositions; and reviewed Mr. Tate's report, Mr. Shiver's report, Mr. Elrod's

report,[5] the SC OSHA report, CDI's safety manual, and the Hitachi excavator operator manual. (Doc. 82-2, at 6-7.) In his initial report, Mr. Sutton provided twenty-seven opinions, and in his supplemental report, he provided several more conclusions regarding Defendant's maintenance of the Excavator and the accident. (See id. at 7-11; Doc. 82-4, at 1-3.) Plaintiffs move to exclude the following: (1) Mr. Sutton's opinions and conclusions related to inapplicable defenses; (2) Mr. Sutton's opinions and testimony regarding Defendant's inventory, interpretation of the Service Invoice, and the provenance of the Subject Hose assembly; and (3) Mr. Sutton's opinions and testimony regarding injury causation, excavator operation, and safety. (Doc. 82, at 6-19.) The Court addresses each argument below.

### 1. Opinions Regarding Inapplicable Defenses[6]

Plaintiffs move to exclude Mr. Sutton's opinions and conclusions related to the affirmative defenses of assumption of risk, contributory negligence, and intervening acts of negligence. (Id. at 6-10.) They argue these opinions go to defenses not at issue in this matter, and they are unduly prejudicial under Rule 403 because they will "confuse the germane issues and the jury,

---

[5] Mr. Jacob Elrod is a forensic investigator that Plaintiffs retained as an expert in this case. (See Doc. 85-6.)

[6] Plaintiffs move to exclude the following: Section VI, Opinion Nos. 22-27 of his initial report; and Section I, Opinions (e)-(g), (i), (k)-(l), (q)-(r), and Section III, opinions (a)-(h) of his supplemental report. (Doc. 82, at 7-10 (citing Doc. 82-2, at 10-11; Doc. 82-4, at 1-3).)

create undue delay, and waste the Court's time."[7] (Id.) Defendant argues these opinions should not be excluded because they negate elements of Plaintiffs' prima facie case, specifically:

> breach of duty; whether the [Subject Hose] was [Defendant's]; whether [Defendant] sold a product that was in a defective condition, unreasonably dangerous to the user; whether the [Subject Hose] was in the same condition at the time of the accident as when it left [Defendant's] hands; and whether the alleged negligence/product defect was the proximate cause of the injury sustained.

(Doc. 92, at 2.) Further, Defendant argues this evidence goes to the central issue of who installed the Subject Hose, so the probative value is substantially outweighed by any danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. (Id. at 7.) For the following reasons, the Court agrees with Defendant on both arguments.

First, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.), 846 F.2d 1343, 1349 (11th Cir. 1988). Here, as Defendant explains, it is using the testimony and opinions of Mr. Sutton on these matters to negate the prima facie elements of Plaintiffs'

---

[7] In their motion, Plaintiffs raise issues on the timeliness of Mr. Sutton's supplemental report; however, Plaintiffs do not move to exclude the supplemental report on such basis. (See Doc. 82, at 8-10 (moving to exclude under Rule 401, 403, and 702 only).) Therefore, the Court does not evaluate the timeliness of Mr. Sutton's supplemental report.

products liability and negligence claims.[8] (Doc. 92, at 5-7.) As such, the Court must allow Defendant to put forth evidence to negate Plaintiffs' claims. See Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1070 (11th Cir. 2014) ("Where [] the plaintiff bears the burden of proving causation and the defendant is unable to challenge fully the plaintiff's causative theory because of a court's evidentiary ruling, the decision to exclude that evidence should not stand."). Therefore, Mr. Sutton's opinions are not excludable under this basis.

Second, Rule 403 states "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presentive cumulative evidence." Here, Plaintiffs move to exclude Mr. Sutton's opinions related to assumption of risk, contributory negligence, and intervening acts of negligence because "Plaintiffs[] will suffer undue prejudice . . . and [the opinions] will confuse the germane issues and the jury, create undue delay, and waste the Court's time." (Doc. 82, at 10.) The Court finds the opinions Plaintiffs move to exclude are relevant and have a high probative value as they have the tendency to prove or disprove elements of Plaintiffs' prima facie case. In

---

[8] The Court discusses the elements of negligence and products liability claims under South Carolina law below in Section II.B.

21

Plaintiffs' motion to exclude, they generally assert Mr. Sutton's opinions should be excluded based on Rule 403, but do not explain how they will be prejudiced by this evidence. (Id.) Therefore, the Court will not exclude Mr. Sutton's opinions related to assumption of risk, contributory negligence, and intervening acts of negligence on Rule 403 grounds.

> 2. Opinions and Testimony Regarding Defendant's Inventory, Interpretation of the Service Invoice, Supply Chain, and the Provenance of the Subject Hose Assembly[9]

Next, Plaintiffs move to exclude Mr. Sutton's opinions and testimony regarding Defendant's inventory, interpreting the Service Invoice, supply chain, and the provenance of the Subject Hose assembly on the following grounds: (1) Mr. Sutton is not qualified to render such opinions; (2) the opinions are unreliable as they are based on conjecture, credulous, uncritical acceptance of Defendant's version of events; and (3) the opinions would not assist the trier of fact. (Id. at 10-16.)

---

[9] Plaintiffs move to exclude seventeen opinions of Mr. Sutton and the supporting bases of these opinions, specifically: Section VI, Opinion Nos. 5-9, 13-22 in his initial report and Section I, Opinions (a)-II(j) in his supplemental report. (Doc. 82, at 11 n.8 (citing Doc. 82-2, at 5-10; Doc. 82-4, at 1-3).) Plaintiffs move to exclude these opinions generally as they pertain to "[Defendant's] Inventory, Interpretation of [Defendant's] Invoice, and the Provenance of the [Subject] Hose Assembly." (Id. at 10.) Plaintiffs also move to exclude Mr. Sutton's opinions related to supply chain. (Id. at 11-13.) Plaintiffs do not specify which of Mr. Sutton's opinions they seek to exclude and under which category they fall. The Court will not categorize each opinion for Plaintiffs, instead, the Court addresses these general categories.

a. *Qualifications*

First, Plaintiffs move to exclude the opinions and testimony of Mr. Sutton on inventory and supply chain because he "lacks the knowledge, training, and experience to qualify as an expert on such matters and [he] merely repeats assertions made by others." (Id. at 3.)  In response, Defendant argues he is qualified to offer this opinion.  (Doc. 92, at 8-9, 14-15.)

An expert may be qualified based on his knowledge, skill, experience, training, or education.  Trilink Saw Chain, LLC, 583 F. Supp. 2d at 1304.  As for inventory, Plaintiffs argue Mr. Sutton is not qualified as an inventory expert, but Defendant argues Mr. Sutton's opinions and testimony are made in his capacity as an accident reconstructionist, not as an inventory expert.  (Doc. 82, at 11; Doc. 92, at 14-15.)  Mr. Sutton testified that accident reconstructionists commonly use records, like inventory records, to understand background information and to determine "who all worked on the machine, when did they work on it, [and] [whether] we have all the records or do we just have partial records." (Sutton Dep., at 14.)  Defendant explains Mr. Sutton's inventory opinions are made in such capacity.  (Doc. 92, at 14-15.) Plaintiffs do not challenge Mr. Sutton's qualifications as an accident reconstructionist, only as an inventory expert.  (See Doc. 82, at 11.)  Because Mr. Sutton's opinions regarding inventory are made in his capacity as an accident reconstructionist, and he

is qualified as such, the Court finds Mr. Sutton is qualified to offer opinions and testimony related to inventory.

As for supply chain, Plaintiffs specifically move to exclude Mr. Sutton's testimony "that raw hose 'just couldn't make it to [Defendant] in time' to be present for the repair work identified on the invoice." (Id. at 12-13 (citing Sutton Dep., at 24).) Plaintiffs argue that despite offering this testimony, Mr. Sutton concedes he is not a supply chain expert and does not know "how long it takes" for a spool of raw hose to reach Defendant after it is manufactured. (Id.) In response, Defendant argues "Mr. Sutton is fully qualified to rebut the opinion of Mr. Tate on this issue," and it would be "unfair" to permit Mr. Tate to testify to this issue and not Mr. Sutton. (Doc. 92, at 16.) As the party offering Mr. Sutton as an expert, Defendant has the burden of proving his qualifications. Allison, 184 F.3d at 1306 (citations omitted). Here, Defendant does not satisfy this burden. Simply arguing Mr. Sutton should be permitted to testify on supply chain speed because Mr. Tate offers similar testimony is insufficient. As such, the Court finds Mr. Sutton is not qualified to opine on supply chain speed, and he is excluded from offering opinions and testimony as to supply chain matters. Plaintiffs also argue Mr. Sutton is not qualified because his conclusions "uncritically accept and parrot Mr. Tolbert's testimony[.]" (Id. at 11.) The Court addresses this challenge below as a reliability challenge.

24

### b. *Reliability*

Plaintiffs make various challenges to the reliability of Mr. Sutton's testimony. Plaintiffs argue: (1) Mr. Sutton "uncritically accept[s] and parrot[s]" the testimony of Mr. Tolbert and his interpretation of Defendant's inventory and maintenance records because Mr. Sutton relies primarily on his conversations with Mr. Tolbert to reach his conclusions; (2) Mr. Sutton merely assumes that Defendant's Inventory Records accurately reflect the amount of raw hose at hand and assumes the work order[10] that details the Excavator repairs is accurate; (3) Mr. Sutton's opinions on the lifespan of a crimped hose are unverified speculation; and (4) that Mr. Sutton relied on several factual inaccuracies in formulating his opinions, including the number of hours the Excavator was used.   (Doc. 82, at 11-15.) Defendant responds to each argument, which the Court addresses in turn.

### i. Uncritical Acceptance and Parroting

Plaintiffs argue Mr. Sutton is inappropriately parroting the testimony of Mr. Tolbert, a fact witness.   (Doc. 82, at 11.)   In response, Defendant asserts that Mr. Sutton is not uncritically accepting and parroting Mr. Tolbert's testimony because he based

---

[10] Plaintiffs refer to the "work order" but do not identify this document.  Based on the narrative in Mr. Sutton's deposition, as well as the fact the Service Invoice is the document attached as an exhibit to Mr. Sutton's deposition, the Court believes the "work order" refers to the Service Invoice and the Court will refer to it as such.  (See Sutton Dep., at 21.)

his opinions on a "wealth of data and information," including photographs, measurements, inspection notes, eight depositions, the CDI safety manual, the Hitachi Excavator operator manual, the SC OSHA report, and the Excavator's maintenance records. (Doc. 92, at 9.) The Court agrees that Mr. Sutton is not uncritically accepting and parroting the testimony of Mr. Tolbert. "Inappropriate parroting occurs when an expert adopts another expert's opinion wholesale, without reaching independent conclusions in reliance on that opinion." Fox, 2019 WL 3483171, at *26. Mr. Sutton did not simply adopt Mr. Tolbert's testimony; rather, he relied on a variety of factors in reaching his opinions, which he explains in his expert report, his deposition, and Defendant explains in its response. (See Doc. 92, at 9-13.) As such, the Court will not exclude Mr. Sutton's testimony on this basis.

### ii. Assumes the Accuracy of Defendant's Inventory Records and Service Invoice

Plaintiffs move to exclude Mr. Sutton's opinions that are based on "[Defendant's] internal maintenance and [I]nventory [R]ecords" because they argue Mr. Sutton uncritically accepted Defendant's version of events and rejected evidence to the contrary because he assumed the accuracy of the Inventory Records and the Service Invoice. (Doc. 82, at 12.) In response, Defendant argues Mr. Sutton did not simply assume the Service Invoice was true and

26

accurate, rather, he concluded the Service Invoice was accurate after he compared the Service Invoice with the Excavator, and second, while Mr. Sutton's opinions are based on the accuracy of the Inventory Records, this challenge is more appropriate for cross-examination. (Doc. 92, at 17-18.)

The Court finds Mr. Sutton did not uncritically accept Defendant's version of events. In his deposition, Mr. Sutton explained he assumed the Inventory Records were correct because the date codes on the hose on the Excavator matched the Inventory Records and he assumed the Service Invoice was correct based on his review of the hoses on the Excavator, the types of hoses, the description on the Service Invoice, and the parts that were charged. (Sutton Dep., at 18-19.) An expert is permitted to rely on assumptions so long as those assumptions have a basis in the record. See U.S. for Use and Benefit of TSI Tri-State Painting, LLC v. Fed. Ins. Co., No. 2:16-cv-113, 2022 WL 135311, at *4 (S.D. Ga. Jan. 13, 2022). Here, Mr. Sutton's assumptions that the Inventory Records and the Service Invoice were correct are supported by the record. Therefore, Mr. Sutton may rely on these assumptions, and to the extent Plaintiffs believe Mr. Sutton improperly considered certain evidence over other evidence in formulating his opinions, they may challenge this on cross-examination. See Tindall, 2012 WL 3242128, at *7.

27

iii. Lifespan of Crimped Hose Opinions are
Unverified Speculation

Plaintiffs argue Mr. Sutton's opinions on the lifespan of a crimped hose are unverified speculation because he has no knowledge of studies or publications dealing with how long an undercrimped hose can last. (Doc. 82, at 14.) In response, Defendant explains Mr. Sutton's opinions on the lifespan of a crimped hose are based on his expertise as an accident reconstructionist. Specifically, Defendant argues his opinion that the Subject Hose was more likely to be installed in 2018 as opposed to 2016 is based on "the many hose failures he has observed over the thirty-five years of being an accident reconstructionist." (Doc. 92, at 18 (citing Sutton Dep., at 31).)

The Court finds this testimony is not sufficiently reliable because Mr. Sutton did not employ a reliable methodology. "The Eleventh Circuit has recognized the existence of experience-based methodology." See Reese v. CSX Transp., Inc., No 1:18-215, 2020 WL 5740253, at *8 (S.D. Ga. Sept. 24, 2020) (citing Frazier, 387 F.3d at 1262). However, "[i]n Kumho Tire, the Supreme Court made it clear that testimony based solely on the experience of an expert would not be admissible . . . [t]he expert's conclusions must be based on scientific principles and the discipline itself must be a reliable one." Rider v. Sandoz Pharms. Corp., 295 F.3d 1194, 1197 (11th Cir. 2002) (citing Kumho Tire, 526 U.S. at 157). Here,

28

Defendant argues Mr. Sutton's opinions on the lifespan of an undercrimped hose are reliable because they are based on his experience as an accident reconstructionist.   (Doc. 92, at 18.) However, without more, experience alone is insufficient to render his opinion reliable.   Therefore, Mr. Sutton may not offer opinions and related testimony regarding the lifespan of an undercrimped hose.   However, the Court will not exclude Mr. Sutton's conclusion regarding the origin of the Subject Hose as his opinion is still supported by other bases.   (See Doc. 92, at 9-13,17.)

### iv. Gross Factual Errors

Plaintiffs challenge Mr. Sutton's "proposition that the [E]xcavator had logged 6,175.2 hours of service as of October 4, 2018, or that it logged some 509 hours of service between the completion of [Defendant's] work in the Fall of 2016 and the date of the incident" as unreliable because he provided no citation or support for these numbers.   (Doc. 82, at 15.)   In response, Defendant explains how Mr. Sutton calculated these numbers and cites evidence in the record Mr. Sutton relied on when making his calculations.   (Doc. 92, at 19.)   Mr. Sutton also explained his calculations in his deposition.   (Sutton Dep., at 30-31.) Therefore, the Court finds these calculations are sufficiently reliable, and to the extent Plaintiffs believe Mr. Sutton's calculations are incorrect, they may challenge this on cross-examination.   See Quiet Tech., 326 F.3d at 1345 (citation omitted)

("[W]hatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony.").

            c. *Assists the Trier of Fact*

Plaintiffs move to exclude Mr. Sutton's testimony related to Defendant's "internal maintenance and [I]nventory [R]ecords" because this testimony is not helpful to a jury. (Doc. 82, at 11.) Plaintiffs argue Mr. Sutton testified there was "nothing in his engineering background or training that would assist the jury in interpreting [Defendant's] internal maintenance and inventory records," and he stated "[y]ou don't need to be an engineer as long as you . . . have the knowledge of [] what the dates mean." (Id. (citing Sutton Dep., at 17).) In response, Defendant explains Mr. Sutton testified that "a forensic engineer or accident reconstructionist was needed to look at all the facts and documents and the entire picture of the incident to determine what occurred." (Doc. 92, at 15.)

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. Here, the Court finds Mr. Sutton's testimony assists the trier of fact. Mr. Sutton testified that a forensic engineer or accident reconstructionist is needed to "put all of this together to show why it is that I hold these opinions." (Sutton Dep., at 18.) Mr. Sutton is not simply testifying to the dates on the Service Invoice, Daily reports, and Inventory Records

as Plaintiffs argue; rather, he is viewing these records in connection with other evidence in the case and offering opinions based on the totality of this evidence. (Doc. 92, at 15-16.) While the Court agrees that a juror may be able to read the Inventory Records, Daily Reports, and Service Invoices to determine "the particular date that somebody worked on a machine," Mr. Sutton's expertise is needed to tie the evidence together. (See id.; Sutton Dep., at 17.) Therefore, the Court finds his testimony will assist the trier of fact.

### 3. Opinions Regarding Injury Causation, Excavator Operation, and Safety[11]

Plaintiffs move to exclude Mr. Sutton's opinions on causation, excavator operation, excavator safety, and OSHA because: (1) Mr. Sutton is not qualified to render such opinions; (2) they are the product of unreliable analysis; and (3) they are not relevant under Federal Rules of Evidence 402 and 403. (Doc. 82, at 16-19.)

#### a. *Qualifications*

Plaintiffs argue Mr. Sutton is not qualified to testify on these matters because he: (1) does not know how to operate an excavator, has not been part of a construction crew, or done any

---

[11] Plaintiffs move to exclude the following: Section VI, Opinion Nos. 17-18, 22-27 in his initial report and Section III, opinions (a)-(h) in his supplemental report. (See Doc. 82, at 16 n.11 (citing Doc. 82-2, at 10-11; Doc. 82-4, at 3).) The Court notes Plaintiffs listed "24" twice under Section VI. (See id.) The Court believes this was in error and that Plaintiffs intended to exclude number 24 and 25.

type of work similar to the work Mr. Reed and Mr. Wheatley were doing; (2) does not have experience formulating rules, policies, or regulations related to the construction industry standards of care; (3) is not a human factors expert; and (4) is not an OSHA expert.  (Id. at 16-17.)  In response, Defendant asserts that Plaintiffs present an incomplete picture of Mr. Sutton's qualifications, and he is qualified to testify to these matters. (Doc. 92, at 20-21.)

First, the Court rejects Plaintiffs' argument that Mr. Sutton is not qualified to offer expert testimony on matters in which he does not have personal experience.  "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."  Trinidad v. Moore, No. 2:15-cv-323, 2016 WL 5239866, at *2 (M.D. Ala. Sept. 20, 2016) (quoting Daubert, 509 U.S. at 592) (rejecting an argument by defendants that the expert was not qualified to testify to general tractor-trailer safety standards because he did not have a commercial driver's license, never attended driving school, worked as a tractor-trailer driver, or driven a tractor-trailer on open road).  Mr. Sutton is not precluded from testifying to these matters simply because he does not know how to operate an excavator or because he has not worked as part of a construction crew.

An expert may be qualified based on his knowledge, skill, experience, training, or education. <u>Trilink Saw Chain, LLC</u>, 583 F. Supp. 2d at 1304. Defendant asserts Mr. Sutton is qualified, and his qualifications are as follows: he has testified many times as to whether OSHA standards were violated; he completed OSHA training on Construction Safety and Health; completed training for the American Society of Materials on Principles of Failure Analysis; served as an instructor on OSHA's Updated (and Improved) Construction Crane and Derrick Standard; studied construction industry standard of care policies and procedures for his work, which often involves workplace accidents; and that as part of the job as an accident reconstructionist, he typically looks at whether a worker is conforming with general safety standards, company procedures, or OSHA/MSHA. (Doc. 92, at 20-21.) Further, Defendant asserts general safety standards are "inextricably part of his accident reconstruction analysis in this matter." (<u>Id.</u>) The Court finds that Defendant sufficiently met its burden in showing Mr. Sutton is qualified to speak on matters of construction safety.

b. *Reliability*

Plaintiffs argue that even if Mr. Sutton is qualified to testify to construction safety matters, his conclusions are not the result of reliable methodology and therefore should be excluded. (Doc. 82, at 18.) Specifically, Plaintiffs argue Mr. Sutton did not investigate specific rules or regulations that

indicated Mr. Reed's conduct on the day of the incident was improper, he relied on "general construction safety rule[s]" rather than identifiable standards, he did not conduct a reenactment or perform any calculations, his analysis did not involve testing, verification, or objective data, and his conclusions on how the accident could have been prevented are only the *ipse dixit* of Mr. Sutton.  (Id. at 16-19.)  In opposition, Defendant argues that Mr. Sutton employed a reliable methodology to form his opinions.  (Doc. 92, at 22.)  Defendant argues Mr. Sutton "relied on the pictures from the [SC] OSHA inspection, the handwritten statements to [SC] OSHA, the [SC] OSHA report, the dimensions of the box, the dimensions and makeup of the [E]xcavator and the chain hook, the pictures of the area where they were picking up the box, the verbal descriptions of where they were putting the box, and the pictures where they were working."  (Id.)  Further, Defendant argues, Mr. Sutton "testified to his detailed thoughts regarding how it was possible to perform the job that Mr. Reed and Mr. Wheatley were performing, with the materials and equipment they had on hand, in a compliant manner."  (Id.)

Plaintiffs argue Mr. Sutton's testimony is not reliable based on the factors in Daubert.  (Doc. 82, at 18.)  However, "accident reconstruction[] is one of those fields in which the Daubert factors are not strictly applied . . . . [r]ather, with accident re-constructionists . . . reliability is found by looking at the

physical and factual information available, apply[ing] standard engineering principles to this information, and determine[ing] the most probable sequence of events." Desert Falcon-Special Mar. Enter. v. E. Coast Terminal Co., No. 4:02-cv-156, 2004 WL 5612966, at *2 (S.D. Ga. Jan. 5, 2004) (citation and internal quotation marks omitted) (finding the expert testimony of a marine surveyor performing the job of an accident reconstructionist sufficiently reliable when his testimony reconstructing a crane accident on a ship was based on his review of parts of depositions, various reports and documents, photographs of the accident scene, a visit to a ship with similar operations, and video recordings of similar operations aboard a different vessel.) Here, Mr. Sutton's opinions are reliable. In formulating his opinions, he reviewed pictures from the OSHA inspection, the handwritten statements to OSHA, the OSHA report, the dimensions of the box, the dimensions and makeup of the Excavator and the chain hooks, pictures of the areas where they were picking up the box, verbal descriptions of where they were putting the box, pictures of where they were working, the Hitachi manual, and Centers for Disease Control Workplace Solutions documents. (Doc. 92, at 22.) He testified that he performed calculations in reaching his conclusions, though not written, and he testified that he reviewed the evidence and looked at how to change things to make this accident not happen, as is the job of an accident reconstructionist. (Id.; Sutton Dep., at

38-39.)  Therefore, Mr. Sutton's opinions on causation, Excavator operation, and safety are reliable.

c. *Relevance*

Lastly, Plaintiffs argue Mr. Sutton's opinions "predicated on the undefined, undisclosed OSHA standards or regulations, to which he has vaguely alluded in his report and deposition testimony" are not admissible under Rules 402 and 403 because "OSHA regulations are not relevant to the liability of a manufacturer to an employee of an industrial consumer."  (Doc. 82, at 19 (citation omitted).) Plaintiffs argue that "evidence that [Mr. Reed], his colleagues, or his employer violated OSHA is irrelevant, far more prejudicial than probative, and not reliable as a basis for expert testimony." (Id.)

Here, the Court finds Mr. Sutton's opinions predicated on the OSHA regulations are not relevant.  The OSHA regulations Mr. Sutton relies on go to the standard of care when operating machinery, which is not an issue in this case; rather, the relevant standard of care in this case involves the standard of care in manufacturing, assembling, and installing the Subject Hose.  (See Doc. 1-1.)    Therefore, Mr. Sutton may not testify to OSHA regulations and as such, he may not offer his Opinions in Part III of his Supplemental Report.  (Doc. 82-4, at 3.)

In conclusion, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to exclude the opinions and testimony of Mr.

Sutton.  (Doc. 82.)  Mr. Sutton is **EXCLUDED** from offering opinions and related testimony regarding supply chain speed, the lifespan of an undercrimped hose, and the opinions found in Part III of his Supplemental Report (Doc. 82-4).

### III. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on all claims, arguing Plaintiffs have failed to prove a genuine dispute of material fact exists as to their claims for products liability, negligence, gross negligence, loss of consortium, and punitive damages.[12]  (See Doc. 85.)  Plaintiffs responded in opposition (Doc. 95), and Defendant did not reply.  The Court addresses Defendant's motion below.

## A. Legal Standard

Defendant moves for summary judgment under Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

---

[12] The negligence, gross negligence, manufacturing defect, failure to warn, and design defect claims are brought individually by Plaintiff Cleveland Reed, the loss of consortium claim is brought individually by Plaintiff Tiffany Reed, and the punitive damages claim is brought by both Plaintiffs.  (See Doc. 1-1.)

574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted and internal quotation marks omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, as is the case here, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet its burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Id. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061,

1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the parties specifically cite and legal arguments they expressly advance. See id.

In this action, the Clerk of Court provided Plaintiffs notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 87.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiffs responded to the motion. (Doc. 95.) The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

**B. Discussion**

Plaintiffs bring negligence and gross negligence claims, and products liability claims of manufacturing defect, failure to warn, and design defect under both strict liability and negligence theories under South Carolina law. (See Doc. 1-1.)

Under South Carolina law, "[a] plaintiff must prove three elements to recover on a claim for negligence: (1) a duty of care

owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." Chakrabarti v. City of Orangeburg, 743 S.E.2d 109, 112 (S.C. Ct. App. 2013) (citation omitted). Gross negligence "has been defined as the intentional, conscious failure to do something which is incumbent upon one to do[, ]the doing of a thing intentionally that one ought not to do, . . . [and] the absence of care that is necessary under the circumstances." See Hollins v. Richland Cnty. Sch. Dist. One, 427 S.E.2d 654, 655 (S.C. 1993) (internal citations and quotations omitted).

For products liability claims, South Carolina law provides:

> regardless of the theory on which the plaintiff seeks recovery, he must establish three elements: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant.

Rife v. Hitachi Const. Mach. Co., 609 S.E.2d 565, 568 (S.C. Ct. App. 2005) (citation omitted). Additionally, "liability for negligence requires, . . . proof that the manufacturer breached its duty to exercise reasonable care to adopt a safe design" and "[u]nder any products liability theory, a plaintiff must prove the product defect was the proximate cause of the injury sustained." Id. at 569 (internal citations omitted).

"When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured."

*Fisher v. Pelstring*, 817 F. Supp. 2d 791, 817 (D.S.C. 2011), *on reconsideration in part* (Jan. 11, 2012) (quotation and citation omitted).   "When a warning defect claim is made, a plaintiff alleges that he was not adequately warned of dangers inherent to a product." Id. (quotation and citation omitted).  Finally, "when a design defect claim is made, a plaintiff alleges that the product at issue was defectively designed, thus causing an entire line of products to be unreasonably dangerous." Id. (alterations adopted and quotation and citation omitted).

Defendant moves for summary judgment on Mr. Reed's claims of manufacturing defect, negligence, and Mrs. Reed's loss of consortium claim because it disputes that it assembled, installed, or sold the Subject Hose; Mr. Reed's failure to warn claim because Defendant disputes that it installed the Subject Hose and that Defendant knew or should have known the Subject Hose was undercrimped; Mr. Reed's design defect claim because he has not produced evidence that Defendant designed the entire line of the failed hose and that the entire line of failed hose is unreasonably dangerous; Mr. Reed's gross negligence claim because there is no evidence Defendant acted willfully or wantonly; and Mr. Reed's punitive damages claim because it argues there is no evidence that Defendant acted willfully, wantonly, or with reckless disregard. (See Doc. 85, 13-24.)  The Court first addresses whether Plaintiffs have put forth enough evidence that Defendant assembled or

42

installed the Subject Hose because this issue underlies most of the claims and then the Court addresses the remaining arguments.

### 1. Whether Defendant Installed or Assembled the Subject Hose on the Excavator

The Court finds there is a genuine issue of fact as to whether Defendant installed the Subject Hose on the Excavator such that summary judgment is precluded. The Parties agree the cause of the accident was improper crimping of the Subject Hose, which caused the hose to burst. (Doc. 94, at 5.) The Parties also agree that Defendant installed four hoses "in the same area that the failure occurred" when it serviced the Excavator in August and September 2016. (Id. at 5-6.) However, Defendant argues it did not install the Subject Hose because the Excavator's hoses were replaced by another entity after Defendant serviced the Excavator and before the accident. (Doc. 85, at 18.) Conversely, Plaintiffs argue Defendant installed the Subject Hose because the hoses were not replaced between the time Defendant serviced the Excavator and the date of the accident. (Doc. 95, at 9.)

To support its position, Defendant relies on the Service Invoice, Daily Reports, and Inventory Records and argues a comparison of these records shows it is "impossible" that the Subject Hose was in Defendant's inventory at the time it serviced the Excavator. (Doc. 85, at 7.) Defendant argues that the Inventory Records confirm there was no hose style "GA12EFG4K" in its inventory between the date of manufacture of the Subject Hose, August 4, 2016, and the date Defendant completed its work on the

Excavator, September 14, 2016. (Id.) Defendant also argues the Inventory Records for hose style "GA12EFG4K" show each time a customer was charged for that hose. (Id.) The Inventory Records show that on March 21, 2016, Defendant receipted an order for 50 feet of hose style "GA12EFG4K," which only ships in 50-foot spools. (Id. at 7-8.) Defendant argues it already had 10 feet of hose "GA12EFG4K" in its inventory, so as of March 21, 2016, Defendant had 60 feet of hose style "GA12EFG4K" in its inventory. (Id. at 8.) On March 29, 2016, Defendant charged a client for eight feet of the hose, and then an additional six feet of the hose. (Id.) On August 30, 2016, Defendant charged CDI for fourteen feet of the hose. (Id.) Defendant argues this shows that all fourteen feet of hose that Defendant used to service the Excavator came from hose that Defendant had in its inventory on March 21, 2016, which was almost five months before Gates manufactured the Subject Hose on August 4, 2016. (Id. at 8-9.) Defendant argues the Inventory Records confirm Defendant did not receive the next shipment of "GA12EFG4K" hose until September 24, 2016, which was ten days after Defendant serviced the Excavator. (Id. at 9.) Defendant argues this confirms that it did not install the Subject Hose into the Excavator. (Id. at 15; Doc. 85-23, at 1-2.)

On the other hand, Plaintiffs support their position that Defendant did install the Subject Hose with the testimony of Mr. Wheatley, which Plaintiffs argue is corroborated by the testimony of Mr. King and Mr. Aplin, and the testimony of Mr. Reed. (Doc.

95, at 13, 17.)   Specifically, Plaintiffs rely on Mr. Wheatley's testimony to show the Subject Hose and the three other hoses adjacent to the Subject Hose were assembled and installed by Defendant as part of Defendant's work described on the Service Invoice.   (Id. at 17.)   Mr. Wheatley testifies that prior to the accident, no hose on the Excavator had failed or been replaced in the area where the Subject Hose failed and neither he nor any CDI employee replaced hoses in the Excavator in the area of the Subject Hose between the time Defendant serviced the Excavator and the 2018 accident.   (Id.)   Plaintiffs argue Mr. Reed's testimony also supports their position, as he testified "he was unaware of Mr. Wheatley ever conducting a hose replacement in the field, that he never witnessed Mr. Wheatley changing hoses on the Excavator, and that he was unaware of any hoses being replaced on the Excavator between September 2017 and the date of the accident."   (Id. at 13 n.2.)   Moreover, Plaintiffs cite the testimony of Mr. Tate, Mr. Tolbert, and Mr. Lane[13] to challenge the accuracy of the records upon which Defendant's position rests.   (Id. at 4-9.)

The Court finds Plaintiffs have presented enough to survive summary judgment on the issue of whether Defendant installed or assembled the Subject Hose.   This dispute turns on the credibility of the evidence presented, which cannot be resolved on summary judgment.   See Gomez v. Harbor Freight Tools, USA, Inc., No. 3:17-

---

[13] Mr. Russ Lane is the former service manager for Defendant's Augusta, Georgia branch.   (Doc. 95, at 6; Doc. 95-5.)

cv-41, 2018 WL 3430685, at *3 (M.D. Ga. July 16, 2018) ("[I]t is not up to the Court at this stage to determine whether [] testimony is credible . . . [t]hat is the jury's job at trial."). As such, Defendant's motion for summary judgment is **DENIED** as to the manufacturing defect, negligence, and loss of consortium claims.

### 2. Design Defect Claim

Next, Defendant moves for summary judgment on Plaintiffs' design defect claim because "Plaintiffs have produced no evidence to show that the entire line of the failed hose is unreasonably dangerous" and "that [Defendant] designed the entire line of the failed hose, i.e., hose style 'GA12EFG4K.'" (Doc. 85, at 19.) Plaintiffs argue in response that the product at issue is the Subject Hose, not raw Gates "GA23EFG4K" hose, that Plaintiffs do not allege Defendant designed the entire line of failed hose, and that in any event, Defendant's arguments "should be rejected in light of the testimony of Mr. Wheatley, Mr. King, Mr. Aplin, Mr. Reed, and Mr. Tate." (Doc. 95, at 21.)

On a motion for summary judgment, the moving party, here, Defendant, bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Four Parcels of Real Prop., 941 F.2d at 1437 (quoting Celotex, 477 U.S. at 323)). When the

46

nonmoving party bears the burden of proof at trial, as is the case here, the moving party may discharge its initial responsibility by "point[ing] to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." Id. at 1438 n.19. Here, rather than point to specific portions of the record to show Plaintiffs cannot meet their burden of proof at trial, Defendant only offers conclusory assertions that Plaintiffs have not produced evidence in support of their design defect claim. (Doc. 85, at 19.) This is insufficient, and as such, summary judgment for Defendant on the design defect claim is improper, and Defendant's motion for summary judgment is **DENIED**.

### 3. Failure to Warn Claim

Defendant moves for summary judgment on Plaintiffs' failure to warn claim because "Plaintiffs have failed to establish that [Defendant] assembled, installed, and sold the [Subject Hose] and that [Defendant] knew, or should have known, that the [Subject Hose] was undercrimped." (Id. at 20.)

In addition to the reasons set forth below, Defendant has not discharged its initial responsibility on a motion for summary judgment. Defendant appears to base its motion on an absence of evidence in support of Plaintiffs' case, however, Defendant has the initial responsibility to "point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." Four Parcels of Real Prop.,

941 F.2d at 1438 n.19.  Simply saying that Plaintiffs cannot meet their burden is insufficient.  Id.

As already determined, there is a factual dispute as to whether Defendant installed, assembled, or sold the Subject Hose. As to whether Defendant knew or should have known the Subject Hose was undercrimped, Plaintiffs cite Mr. Tate's testimony and the testimony of Mr. Joshua Grimaud, one of Defendant's technicians that worked on the Excavator from August 29, 2016, to September 14, 2016, in support of their position that Defendant had actual or constructive knowledge of the Subject Hose's defectiveness. (Doc. 94, at 12; Doc. 95, at 22.)  Specifically, Mr. Tate testified that "[Defendant] had a responsibility to check the dimensions of the completed hose assembly to make sure it was the right size before it was given to [a] customer or installed on a machine" and Mr. Grimaud testified that Defendant did not go behind the crimping machine and make sure the crimps were correct before installing them on equipment.  (Doc. 95, at 22.)  Moreover, Plaintiffs argue Defendant was on notice because it knew of the proper crimping specifications and did not use them, and the Subject Hose deviated from the proper crimping specifications.  (Id.)

Under South Carolina law, "there is no general duty to warn, [but] where a defendant negligently or intentionally creates the risk, that defendant owes a duty to warn third persons or potential victims of the danger."  Mack v. Wal-Mart Stores, Inc., No. 1:07-cv-3105, 2007 WL 3177000, at *3 (D.S.C. Oct. 26, 2007)

(citation omitted).   Moreover, for a negligent failure to warn claim,

> [a] supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous.

Holst v. KCI Konecranes Int'l Corp., 699 S.E.2d 715, 723 (S.C. Ct. App. 2010) (citation omitted).   Here, Plaintiffs have presented sufficient evidence from which a jury could conclude that Defendant created the risk by undercrimping the Subject Hose, knew or had reason to know the Subject Hose was undercrimped, and failed to warn of that danger.   Thus, Defendant's motion for summary judgment on Plaintiffs' failure to warn claim is **DENIED**.

### 4. Gross Negligence Claim

Defendant moves for summary judgment on Plaintiffs' gross negligence claim and argues Plaintiffs cannot establish Defendant assembled or installed the Subject Hose or that Defendant acted willfully or wantonly.   (Doc. 85, 21-23.)   Moreover, Defendant argues "any reference to the inadequate pressure ratings of the hoses that [Defendant] admits it replaced cannot serve as support for Plaintiffs' gross negligence claim" because undercrimping caused the Subject Hose to burst, not inadequate pressure ratings. (Id.)

The Court has already determined there is sufficient evidence for a jury to find that Defendant assembled and installed the Subject Hose to preclude summary judgment.   As for Defendant's remaining arguments, Plaintiffs assert that Mr. Tate noted Defendant should have discovered the crimping defect during the fabrication process, Mr. Grimaud's testimony shows Defendant did not conduct inspections of the crimp diameter, and Mr. Joshua Shoults, who was the Parts Manager at Defendant's Augusta, Georgia location at the time of the incident, confirms Defendant was using incorrect crimp data which exceeded the permissible standards from Gates.   (Doc. 95, at 24.)

Under South Carolina law, gross negligence has been defined as "the intentional, conscious failure to do something which is incumbent upon one to do[,] the doing of a thing intentionally that one ought not to do, . . . [and] the absence of care that is necessary under the circumstances." Hollins, 427 S.E. 2d at 655 (citations and internal quotations omitted).   Gross negligence is a mixed question of law and fact, unless "the evidence supports but one reasonable inference, the question becomes a matter of law for the court." Bass v. S.C. Dept. of Soc. Serv., 780 S.E.2d 252, 258 (S.C. 2015) (citation omitted).   Here, there is enough evidence to create a factual dispute as to whether Defendant was grossly negligent.   Plaintiffs presented evidence that the crimping defect on the Subject Hose should have been discovered during the fabrication process, Defendant did not conduct inspections of

crimp diameter, and the crimp standards utilized by Defendant exceeded the recommended standards.   (See Doc. 95, at 24.) Therefore, the issue of gross negligence is a mixed question of law and fact that cannot be decided by the Court.   Accordingly, Defendant's motion for summary judgment as to Plaintiffs' gross negligence claim is **DENIED**.

### 5. Punitive Damages Claim

Lastly, Defendant moves for summary judgment on Plaintiffs' punitive damages claim because "there is no evidence in the record to conclusively establish that [Defendant] assembled or installed the [Subject Hose], much less any evidence supporting an inference that [Defendant] somehow acted in a willful, wanton, or reckless manner in its alleged assembly and/or installation of the same." (Doc. 85, at 24.)   Under South Carolina law, "[i]n order for a plaintiff to recover punitive damages, there must be evidence the defendant's conduct was wil[l]ful, wanton, or in reckless disregard of the plaintiff's rights . . . . [a] conscious failure to exercise due care constitutes wil[l]fulness."   McCourt v. Abernathy, 457 S.E.2d 603, 607 (S.C. 1995) (internal citation omitted).   As previously discussed, Plaintiffs have presented enough evidence to survive summary judgment on the issue of whether Defendant assembled or installed the Subject Hose.   Additionally, as discussed, Plaintiffs have presented evidence that Defendant utilized incorrect crimping data, failed to inspect the accuracy of the crimping of the Subject Hose, and provided CDI with an

undercrimped hose.   Thus, there is a genuine issue of material fact as to whether Defendant consciously failed to exercise due care in crimping the Subject Hose.   As such, Defendant's motion for summary judgment as to punitive damages is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion to exclude in part the testimony of Mr. Sutton (Doc. 82) is **GRANTED IN PART and DENIED IN PART**, Defendant's motion for summary judgment (Doc. 84) is **DENIED**, Defendant's motion to exclude in part the testimony of Mr. Tate (Doc. 88) is **GRANTED IN PART and DENIED IN PART**, and Defendant's motion to exclude in part the testimony of Mr. Shiver (Doc. 88) is **DENIED AS MOOT**.   The case **SHALL** proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of March, 2023.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA